IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DSM IP ASSETS, B.V.; DSM PURITY, B.V.; DSM BIOMEDICAL, B.V.; & DSM BIOMEDICAL, INC., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) C.A. No. 23-675 (WCB) ) ) |
| HONEYWELL INTERNATIONAL, INC., | ) ) |
| Defendant. | ) ) |

**DEFENDANT HONEYWELL INTERNATIOAL INC.'S OPENING BRIEF
IN SUPPORT OF ITS MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6)**

OF COUNSEL:

S. Benjamin Pleune
M. Scott Stevens
Lauren N. Griffin
Matthew M. Turk
Erin Beaton
ALSTON & BIRD LLP
1120 South Tryon Street
Suite 300
Charlotte, NC  28203-6818
(704) 444-1000

August 28, 2023

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Benjamin Yenerall (#7132)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19801
(302) 658-9200
rsmith@morrisnichols.com
byenerall@morrisnichols.com

*Attorneys for Defendants*

## **TABLE OF CONTENTS**

**Page(s)**

I. NATURE AND STAGE OF THE PROCEEDINGS .......................................................................... 1

II. SUMMARY OF ARGUMENTS ................................................................................................ 2

III. STATEMENT OF FACTS ....................................................................................................... 2

IV. LEGAL STANDARDS ........................................................................................................... 4

V. ARGUMENT ....................................................................................................................... 4

    A. DSM's Complaint Should Be Dismissed Because DSM Fails to Plausibly Plead Direct Infringement ........................................................................................ 5

    B. DSM's Complaint Should Be Dismissed Because DSM Fails to Plausibly Plead Indirect Infringement ..................................................................................... 9

        1. DSM Fails to Plausibly Plead Induced Infringement. ............................... 10

    C. DSM's Complaint Should Be Dismissed Because DSM Fails to Plausibly Plead Willful Infringement ....................................................................................... 12

VI. CONCLUSION ................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................................................4

*Bayer Healthcare LLC v. Baxalta Inc.*,
  989 F.3d 964 (Fed. Cir. 2021) ..................................................................................................14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................4, 7

*Boston Sci. Corp. v. Nevro Corp.*,
  415 F. Supp. 3d 482 (D. Del. 2019) .........................................................................5, 8, 12, 14

*Bot M8 LLC v. Sony Corp. of Am.*,
  4 F.4th 1342 (Fed. Cir. 2021) ....................................................................................................5

*Callwave Communs. LLC v. AT&T Mobility LLC*,
  C.A. No. 12-1701-RGA, 2014 WL 5363741 (D. Del. Jan. 28, 2014) .......................................8

*DIFF Scale Operation Rsch., LLC v. MaxLinear, Inc.*,
  C.A. No. 19-2109-LPS-CJB, 2020 WL 2220031 (D. Del. May 7, 2020) ................................7

*Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*,
  946 F.3d 1367 (Fed. Cir. 2020) ................................................................................................12

*Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*,
  845 F.3d 1357 (Fed. Cir. Jan. 12, 2017) ..................................................................................10

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  579 U.S. 93 (2016) ..............................................................................................................13, 14

*iFIT Inc. v. Peloton Interactive, Inc.*,
  C.A. No. 21-507-RGA, 2022 WL 609605 (D. Del. Jan. 28, 2022) .........................................13

*IP Commun. Solutions, LLC v. Viber Media (USA) Inc.*,
  C.A. No. 16-134-GMS, 2017 WL 1312942 (D. Del. Apr. 5, 2017) ........................................11

*Lincoln Ben. Life Co. v. AEI Life, LLC*,
  800 F.3d 99 (3d Cir. 2015) .........................................................................................................8

*Modern Telecom Sys., LLC v. TCL Corp.*,
  C.A. No. 17-583-LPS-CJB, 2017 WL 6524526 (D. Del. Dec. 21, 2017) ...............................13

*MONEC Holding AG v. Motorola Mobility, Inc.*,
 897 F. Supp. 2d 225 (D. Del. 2012)..................................................................................11

*N. Star Innovations, Inc. v. Micron Tech., Inc.*,
 C.A. No. 17-506-LPS-CJB, 2017 WL 5501489 (D. Del. Nov. 16, 2017)............................5, 6

*Promos Techs., Inc. v. Samsung Elecs. Co.*,
 C.A. No. 18-307-RGA, 2018 WL 5630585 (D. Del. Oct. 31, 2018).....................................5, 9

*Prowire LLC v. Apple, Inc.*,
 C.A. No. 17-223, 2017 WL 3444689 (D. Del. Aug. 9, 2017) .....................................................8

*Shire ViroPharma Inc. v. CSL Behring LLC*,
 C.A. No. 17-414, 2019 WL 3546692 (D. Del. Aug. 5, 2019) ....................................................9

*Software Research, Inc. v. Dynatrace LLC*,
 316 F. Supp. 3d 1112 (N.D. Cal. 2018) ....................................................................................13

*State Indus., Inc. v. A.O. Smith Corp.*,
 751 F.2d 1226 (Fed. Cir. 1985)..................................................................................................13

*ThermoLife Int'l LLC v. GNC Corp.*,
 922 F.3d 1347 (Fed. Cir. 2019)..................................................................................................8

*Tonal Sys. v. Icon Health & Fitness*,
 C.A. No. 20-1197-LPS, 2021 WL 1785072 (D. Del. May 4, 2021)...................................10, 12

*Uniloc 2017 LLC v. Zenpayroll, Inc.*,
 C.A. No. 19-1075-CFC-SRF, 2020 WL 4260616 (D. Del. July 23, 2020) ...........................5, 8

*Uniloc 2017 LLC v. ZenPayroll, Inc.*,
 C.A. No. 19-1075-CFC-SRF, 2021 WL 271800 (D. Del. Jan. 27, 2021)..............................5, 8

*Välinge Innovation AB v. Halstead New England Corp.*,
 C.A. No. 16-1082-LPS-CJB, 2018 WL 2411218 (D. Del. May 29, 2018) ............................12

*Vita-Mix Corp. v. Basic Holding, Inc.*,
 581 F.3d 1317 (Fed. Cir. 2009)..................................................................................................10

**Rules and Statutes**

Fed. R. Civ. P. 8(a)(2)...............................................................................................................4

Fed. R. Civ. P. 12(b)(6)........................................................................................................1, 4

## I.   NATURE AND STAGE OF THE PROCEEDINGS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Honeywell International Inc. ("Defendant" or "Honeywell") respectfully moves to dismiss the Complaint filed by DSM IP Assets, B.V., DSM Purity, B.V., DSM Biomedical, B.V., and DSM Biomedical, Inc. (collectively, "Plaintiff" or "DSM") alleging infringement of U.S. Patent No. 10,280,532 (the "'532 Patent").[1]

DSM's Complaint does not allege sufficient facts to support its claims and offers only generic, vague, and conclusory infringement allegations. Contrary to the standards required by *Twombly/Iqbal*, DSM's allegations merely identify the '532 Patent and its claim limitations, identify the accused products, recite the claim limitations, and make conclusory allegations of infringement almost entirely "upon information and belief." The Complaint contains no citations, sources, weblinks, or other materials to support is allegations. DSM's Complaint concedes that the accused SPECTRA Blue Products "have been commercially available to Honeywell's customers since at least the third quarter of 2022," but fails to provide any evidence that DSM acquired the accused products, or that DSM performed any testing or analysis of the accused products.

DSM's threadbare allegations in the Complaint fail to meet the pleading standards under *Twombly/Iqbal*, which require the allegations be plausible based on the facts alleged. DSM's allegations are not. For at least the reasons discussed herein, DSM's allegations are entirely insufficient, and Honeywell respectfully asks this Court to dismiss DSM's Complaint *with prejudice* in its entirety for failure to state a claim.

---

[1] Honeywell understands DSM's Complaint to allege direct infringement, either literally or under the doctrine of equivalents, induced infringement, and willful infringement. DSM's Complaint does not allege contributory infringement. Should DSM assert that it does allege contributory infringement, Honeywell also moves to dismiss any such claims of contributory infringement at least because DSM fails to allege any underlying act of direct infringement by Honeywell or any third party.

**II.  SUMMARY OF ARGUMENTS**

DSM's Complaint fails to state a claim because:

1. As to direct infringement, DSM's Complaint does not allege facts plausibly showing that Honeywell's Accused Products practice every limitation of the Asserted Claims. DSM's factual allegations do nothing more than parrot the claim language and indicate that the limitations are met "on information and belief."

2. As to induced infringement, DSM's Complaint contains vague, conclusory statements and lacks factual allegations to support an inference that Honeywell knew of the '532 Patent, had knowledge that any alleged acts constituted indirect infringement, or that Honeywell had specific intent to induce third parties to infringe.

3. As to willful infringement, DSM's Complaint again contains vague, conclusory statements and lacks factual allegations to support an inference that Honeywell knew of the '532 Patent, had knowledge that any alleged acts constituted infringement, or that Honeywell knew or should have known that any alleged acts constituted infringement.

**III.  STATEMENT OF FACTS**

On June 22, 2023, DSM filed the present Complaint for alleged direct, indirect (induced), and willful infringement of U.S. Patent No. 10,280,532. D.I. 1 at ¶ 1. The '532 Patent, titled "Colored Suture," relates to a "[s]uture containing filaments of ultra-high molecular weight polyethylene (UHMWPE), characterized in that the suture contains a multi-filament yarn that is obtained by [the claimed] process." D.I. 1, Ex. 1 ('532 Patent), abstract. Claim 1 of the '532 Patent, the sole independent claim, recites:

> 1. A colored multi-filament yarn comprising filaments that have been obtained by gel spinning a mixture containing ultra-high molecular weight polyethylene (UHMwPE) having an intrinsic viscosity (IV) of between about 8 and 40 dl/g, a spin solvent and a pigment, and wherein the filaments consist of UHMwPE, between

2

> 0.1 and 7.0 wt. % of an inorganic chromium oxide-containing pigment, a residual amount of spin solvent of less than about 500 ppm, and less than 1000 ppm of further constituents.

'532 Patent, cl. 1; *see also* D.I. 1 at ¶ 31.  Thus, all claims of the '532 Patent require a multi-colored yarn comprising filaments obtained from gel spinning a mixture of (1) UHMwPE having an intrinsic viscosity between 8 and 40 dl/g, (2) a spin solvent, and (3) a pigment.  The resulting filaments *must* consist of between 0.1 and 7.0 wt. % of an inorganic pigment containing chromium oxide, less than about 500 ppm of residual spin solvent, and less than 1000 ppm of other components.  *Id.*  DSM alleges that Honeywell's SPECTRA® Medical Grade Bio ("SPECTRA MG Bio") fiber products infringe the '532 Patent.  The SPECTRA MG Bio fiber products identified in the Complaint include the SPECTRA® MG10 BIO Blue, SPECTRA® MG13 BIO Blue, and SPECTRA® MG21 BIO Blue (collectively, the "SPECTRA Blue Products" or the "Accused Products").

DSM has never contacted Honeywell, through a notice letter or any other means, to inform Honeywell of its alleged infringement.  Prior to filing the Complaint, DSM also never requested samples of the accused products from Honeywell, and presumably acquired samples through other means, if at all.  In any event, DSM's Complaint fails to describe any analysis or testing of Honeywell's SPECTRA Blue Products that would support its bald conclusions that "on information and belief, each SPECTRA Blue Product contains less than 60 ppm of residual spin solvent and less than 1000 ppm of other components." D.I. 1 at ¶ 56.  In fact, other than citations to the '532 Patent, the Complaint does not identify or provide any citations, examples, website links, exemplary materials, product guides, or videos to support its allegations.  Rather, DSM's allegations rest almost entirely upon "information and belief."  *See generally* D.I. 1.

3

## IV.  LEGAL STANDARDS

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint, however, must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555-56 (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). A court must strip away threadbare recitals and conclusory allegations before considering any remaining factual allegations. *Id.* The remaining factual allegations in the complaint must be enough to raise a right to relief above the speculative level on the assumption that all the complaint's allegations are true. *Twombly*, 550 U.S. at 545, 555-56. That is, the asserted claims must be plausible based on the factual allegations. *Iqbal*, 556 U.S. at 678-79.

## V.  ARGUMENT

Each of DSM's infringement allegations is nothing more than a formulaic recitation of the statutory elements of each cause of action without any supported factual allegations or proofs. For at least the reasons discussed herein, DSM's Complaint should be dismissed in its entirety with prejudice for failure to satisfy Federal Rule of Civil Procedure 8(a) and the *Twombly*/*Iqbal* standard.

## A. DSM's Complaint Should Be Dismissed Because DSM Fails to Plausibly Plead Direct Infringement

"To survive a 12(b)(6) motion, a complaint alleging direct infringement must contain facts plausibly indicating that a defendant's accused product practices each limitation of the asserted patent. . . ." *Uniloc 2017 LLC v. ZenPayroll, Inc.*, C.A. No. 19-1075-CFC-SRF, 2021 WL 271800, at *5 (D. Del. Jan. 27, 2021) ("*Uniloc II*"); *see also Uniloc 2017 LLC v. Zenpayroll, Inc.*, C.A. No. 19-1075-CFC-SRF, 2020 WL 4260616, at *2 (D. Del. July 23, 2020), *report and recommendation adopted*, 2020 WL 5077416 (D. Del. Aug. 27, 2020) ("*Uniloc I*") (same). "[A] plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). Simply reciting claim limitations and concluding that the accused product has those elements is not enough to make a claim of direct infringement plausible. *Id.* at 1352-53; *see also N. Star Innovations, Inc. v. Micron Tech., Inc.*, C.A. No. 17-506-LPS-CJB, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017) (dismissing complaint that "parrot[ed] back the language of [the] claim elements and then state[d] that the accused product [wa]s comprised of such elements"); *Promos Techs., Inc. v. Samsung Elecs. Co.*, C.A. No. 18-307-RGA, 2018 WL 5630585, at *4 (D. Del. Oct. 31, 2018) (stating that "[t]he slight alterations to the claim language . . . to describe Defendants' products do nothing to articulate *why* the accused . . . products infringe the asserted patents") (emphasis original). Rather, there must be some specific factual allegations "show[ing] *how* the defendant plausibly infringes by . . . connecting the allegedly infringing product to the claim elements." *Uniloc II*, 2021 WL 271800, at *2 (quoting *Boston Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 489 (D. Del. 2019)) (emphasis in original); *see also Uniloc I*, 2020 WL 4260616, at *2 (same).

DSM's allegations of direct infringement are insufficient to satisfy the *Twombly*/*Iqbal* standard because the Complaint does nothing more than parrot back the claim language and then conclusively state, based on nothing more than "information and belief," that Honeywell's Accused Products directly infringe. The Complaint does not (1) allege facts explaining *how* Honeywell's products infringe the asserted patents; (2) provide descriptions, photographs, diagrams, or depictions alleging *how* Honeywell's products operate; or (3) provide any claim charts. "[M]erely copying the language of a claim element, and then baldly stating (without more) that an accused product has such an element," fails to satisfy DSM's "obligation to assert a plausible claim of infringement under the *Twombly*/*Iqbal* standards." *N. Star Innovations*, 2017 WL 5501489, at *2.

Although DSM's patent is simply titled "Colored Suture," the elements of the asserted claims require much more. For example, claim 1 of the '532 Patent requires filaments obtained from gel spinning a mixture of (1) UHMwPE having an intrinsic viscosity between 8 and 40 dl/g, (2) a spin solvent, and (3) a pigment. Claim 1 of the '532 Patent also include several additional limitations that, even though specific, can of course be determined through routine testing. In particular, the filaments must consist of UHMwPE, between 0.1 and 7.0 wt. % of an inorganic pigment containing chromium oxide, less than about 500 ppm of residual spin solvent, and less than 1000 ppm of other components. *See* '532 Patent, cl. 1.

Rather than provide Honeywell and the Court with any analysis or testing, DSM's allegations merely regurgitate the claim limitations and then make conclusory statements, based on nothing more than "information and belief," that Honeywell's Accused Products practice each limitation:

6

> 49. SPECTRA® MG10 BIO Blue and SPECTRA® MG13 BIO Blue are *blue-colored yarns containing about 40 filaments of ultra-high molecular weight polyethylene ("UHMWPE")*.
>
> 50. SPECTRA® MG21 BIO Blue is a *blue-colored yarn containing about 60 filaments of UHMWPE*.
>
> 51. ***On information and belief***, the filaments in the SPECTRA® Blue Products are *manufactured by a gel-spinning process*.
>
> 52. ***On information and belief***, the gel-spinning process used to make the filaments in the SPECTRA® Blue Products includes *gel-spinning UHMWPE and C.I. Pigment Blue 36 in a spin solvent*.
>
> 53. The SPECTRA® Blue Products exhibit characteristics substantially similar to the exemplary multi-filament yarns described in the '532 patent, including . . . ***on information and belief***, *an intrinsic viscosity between 8-40 dl/g*.
>
> 54. ***On information and belief***, the filaments in the SPECTRA® Blue Products contain *about 1-2% by weight of C.I. Pigment Blue 36*.
>
> 55. C.I. Pigment Blue 36 is a blue pigment containing a mixed oxide of cobalt, aluminum, and chromium.
>
> 56. Given their intended use in medical applications, ***on information and belief***, the colored UHMWPE filaments in each SPECTRA® Blue Product are of high purity.
>
> 57. Other than UHMWPE and C.I. Pigment Blue 36, ***on information and belief***, each SPECTRA® Blue Product *contains less than 60 ppm of residual spin solvent and less than 1000 ppm of other components*.

*Compare* D.I. 1 at ¶¶ 49-57 (emphasis added) *with* '532 Patent, cl. 1.

DSM cannot reasonably argue that these deficient allegations do anything more than repeat the claim limitations and then baldly state that Honeywell's Accused Products somehow practice them. *See Twombly*, 550 U.S. at 555-56; *DIFF Scale Operation Rsch., LLC v. MaxLinear, Inc.*, C.A. No. 19-2109-LPS-CJB, 2020 WL 2220031, at *2 (D. Del. May 7, 2020) (dismissing claims where "[c]omplaint's key direct infringement allegations are merely a line-for-line recitation from the asserted patent claim"). DSM's Complaint does not contain even a single citation, document, or other reference to support its allegations of infringement. Such insufficient

7

factual allegations or proofs utterly fail to "show *how* the defendant plausibly infringes by . . . connecting the allegedly infringing product to the claim elements." *Uniloc II*, 2021 WL 271800, at *2 (quoting *Boston Sci. Corp.*, 415 F. Supp. 3d at 489) (emphasis in original); *see also Uniloc I*, 2020 WL 4260616, at *4 (dismissing infringement claim where plaintiff's "allegation[s] parrot[ed] the language of the claim without any factual support" and plaintiff "did not provide examples or otherwise explain how [a product met] the elements of the asserted claim").

Honeywell acknowledges that pleading "on information and belief" is generally permissible "when the facts at issue are peculiarly within the defendant's possession." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 n.31 (3d Cir. 2015); *see also Prowire LLC v. Apple, Inc.*, C.A. No. 17-223, 2017 WL 3444689, at *5 n.28 (D. Del. Aug. 9, 2017). That is not the case here. According to the Complaint, the accused SPECTRA Blue Products "have been commercially available to Honeywell's customers since at least the third quarter of 2022." DSM could have obtained (and presumably did obtain) the accused SPECTRA Blue Products prior to filing its Complaint to perform the necessary pre-suit investigation.

To the extent DSM introduces some argument at this late stage that samples of the accused products were somehow unobtainable, such assertions should ring hollow. While it is true that DSM was not required to contact Honeywell before filing the lawsuit, such a step could have been part of a pre-suit investigation where samples of the accused products are difficult to obtain. *See, e.g.*, *ThermoLife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1360 (Fed. Cir. 2019) ("Whether testing [of an accused product] is necessary . . . necessarily depends on the availability of the products at issue, the existence and costs of testing, and whether other sufficiently reliable information exists."); *see also Callwave Communs. LLC v. AT&T Mobility LLC*, C.A. No. 12-1701-RGA, 2014 WL 5363741, at *1 (D. Del. Jan. 28, 2014) (explaining that pre-suit letter allows

"the patent holder and the asserted infringer [to] exchange information, and the asserted infringer might then take a license, or the patent holder might learn of reasons why suit should not be filed"). Honeywell and DSM are not unknown to one another. Honeywell and DSM have competed in this industry for many years and have been involved in previous intellectual property disputes. Honeywell is an established, publicly traded company with its headquarters in Charlotte, North Carolina. Honeywell has its own extensive intellectual property holdings, and understands the importance of respecting the intellectual property of its competitors. To the extent DSM was somehow stymied in its ability to perform a proper and fulsome pre-suit analysis, it should have contacted the very same representatives with whom DSM has negotiated in the past to acquire sufficient information to prove or disprove its claim *before* it brought this matter to federal court. Its failure to do so is no excuse for its facially deficient Complaint.

Regardless of the extent of DSM's pre-suit investigation, DSM's Complaint provides only generic, unsupported, and conclusory statements that Honeywell infringes without any explanation of how Honeywell's SPECTRA Blue Products practice each claim limitation. These allegations are insufficient to support a plausible claim of direct infringement and should be dismissed.

**B.      DSM's Complaint Should Be Dismissed Because DSM Fails to Plausibly Plead Indirect Infringement**

It is well-established that "both direct and indirect infringement claims are subject to the *Twombly*/*Iqbal* standard." *Shire ViroPharma Inc. v. CSL Behring LLC*, C.A. No. 17-414, 2019 WL 3546692, at *3 (D. Del. Aug. 5, 2019) (citation omitted). Because direct infringement is a prerequisite for a claim of indirect infringement, and because DSM did not properly plead direct infringement, any allegations of indirect infringement also fail. *See Promos Techs., Inc.*,

9

2018 WL 5630585, at *5 ("To the extent that direct infringement of the patents-in-suit has not been sufficiently pled, the indirect infringement claims also suffer from pleading defects.").

### 1. DSM Fails to Plausibly Plead Induced Infringement

In addition to direct infringement, "[a] party asserting a claim of induced infringement must plead facts plausibly demonstrating that . . . 'the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent.'" *Tonal Sys. v. Icon Health & Fitness*, C.A. No. 20-1197-LPS, 2021 WL 1785072, at *3 (D. Del. May 4, 2021) (quoting *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009)). "Mere 'knowledge of the acts alleged to constitute infringement' is not sufficient" to plausibly demonstrate action to induce and specific intent. *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357, 1368, (Fed. Cir. Jan. 12, 2017) (internal citations omitted).

DSM has failed to plausibly plead induced infringement because not only does the Complaint fail to sufficiently plead direct infringement, the Complaint also fails to plausibly demonstrate that Honeywell (1) actually knew of the '532 Patent, (2) knowingly induced the allegedly infringing acts, and (3) possessed a specific intent to encourage another's infringement of the '532 Patent. DSM asserts, without support, that Honeywell knew of the '532 Patent because, "[o]n information and belief, given their status as direct competitors in the medical grade UHMWPE fiber market, Honeywell actively monitors DSM's publicly available United States patent applications and granted patents relating to DSM's UHMWPE fiber technologies." D.I. 1 at ¶ 65. "[T]hrough its patent monitoring activities," DSM conclusively states that "[o]n information and belief," Honeywell has had actual knowledge of the application that granted as the '532 Patent since its publication date of February 16, 2017, has had actual knowledge of the '532 Patent since the '532 Patent was granted on May 7, 2019, since at least Honeywell began

10

manufacturing the SPECTRA Blue Products, and since at least June 22, 2023, when this Complaint was filed and subsequently served on Honeywell. D.I. 1 at ¶¶ 65-69, 76.

DSM's allegations are insufficient. The Complaint offers an unspecified manufacturing date and three *possible* dates at which point Honeywell allegedly had knowledge of the '532 Patent, but then fails to plead any facts that support or provide any basis on which to draw a reasonable inference that Honeywell had actual knowledge of the '532 Patent. The Complaint does not allege any facts showing that Honeywell knew that the Accused Products (allegedly) infringed the '532 Patent. Instead, DSM's allegations regarding Honeywell's knowledge of alleged infringement are conclusory statements based solely "on information and belief" that merely recite the legal requirements for induced infringement. *See* D.I. 1 at ¶¶ 66-76.

Indeed, the Complaint:

– contains no facts demonstrating that Honeywell specifically intended another to infringe the '532 Patent;

– provides no specific examples, website links, exemplary materials, product guides, videos, or citations, let alone any explanation of how such examples support specific intent to infringe. *See, e.g., IP Commun. Solutions, LLC v. Viber Media (USA) Inc.*, C.A. No. 16-134-GMS, 2017 WL 1312942, at *4 (D. Del. Apr. 5, 2017) (dismissing allegations of induced infringement because providing website links to accused infringer's website that included instructions on how to use the accused products do not support the existence of the accused infringer's specific intent to induce infringement); *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 234-35 (D. Del. 2012) (alleged marketing activity such as "selling, advertising, supplying and instructing its

11

    respective customers on the use of the infringing product" insufficient to support specific intent requirement of induced infringement claim);

- contains no suggestion of *who* any third-party infringer might be, let alone sufficient factual allegations to plausibly allege that such unnamed third-party practices the '532 Patent; and

- contains no factual allegations regarding any acts by Honeywell that would create a plausible inference that Honeywell intentionally induced that unnamed third party into infringing.

For at least these reasons, DSM's bald, conclusory allegations of indirect infringement are inadequate as a matter of law and should be dismissed. *See, e.g., Boston Sci. Corp.*, 415 F. Supp. 3d at 492 (dismissing claim of induced infringement because "[a] complaint must include more than mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' to survive a motion to dismiss" and "conclusory statements about [an alleged infringer's] knowledge of infringing activity are insufficient to state a plausible claim").

### C.  DSM's Complaint Should Be Dismissed Because DSM Fails to Plausibly Plead Willful Infringement

In addition to direct infringement, a party asserting a claim of willful infringement "must allege facts plausibly showing that, as of the time of the asserted patent's filing date, the accused infringer: (1) knew of the [asserted patent]; (2) after acquiring that knowledge, it infringed the patent[]; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent[]." *Tonal Sys.*, No. 20-1197-LPS, 2021 WL 1785072, at *6 (quoting *Välinge Innovation AB v. Halstead New England Corp.*, C.A. No. 16-1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2018), *report and recommendation adopted*, 2018 WL

12

11013901 (D. Del. Nov. 6, 2018); *see also Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378-79 (Fed. Cir. 2020).

Because DSM did not properly plead direct infringement, any allegations of willful infringement also fail. *See Modern Telecom Sys., LLC v. TCL Corp.*, C.A. No. 17-583-LPS-CJB, 2017 WL 6524526, at *4 (D. Del. Dec. 21, 2017) (finding allegations of willful infringement "necessarily insufficient" where there was no direct infringement because "allegations of induced, contributory and willful infringement all require that there be plausible allegations of direct infringement"). DSM's willfulness allegations are just more of the same bald, conclusory statements that fail to plausibly demonstrate how Honeywell willfully infringed the '532 Patent.

First, DSM's allegation that Honeywell had pre-suit notice of the application that granted as the '532 Patent is insufficient to support DSM's willfulness claim. Mere knowledge of a patent application "is not enough to establish knowledge of the patent(s) that issued from that application and therefore not enough to establish willfulness." *iFIT Inc. v. Peloton Interactive, Inc.*, C.A. No. 21-507-RGA, 2022 WL 609605, at *2 (D. Del. Jan. 28, 2022) (citing *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985)). All of DSM's allegations regarding *possible* dates Honeywell *may* have acquired knowledge of the '532 Patent are insufficient because "mere knowledge of a patent cannot support an allegation of willful infringement." *Id.* at *2. Moreover, because "[DSM] does not allege that it notified [Honeywell] . . . of the asserted patent[] . . . or discussed [it] with [Honeywell] before filing suit. . . . [DSM] does not allege facts which amount to 'willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate.'" *Software Research, Inc. v. Dynatrace LLC*, 316 F. Supp. 3d 1112, 1137 (N.D. Cal. 2018) (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103-04 (2016)).

13

Second, DSM's unsupported allegations, based only "on information and belief," are conclusory recitations of the requirements for a claim of willful infringement and fail to provide any supporting facts showing that Honeywell knew that the Accused Products (allegedly) infringed the '532 Patent. The Complaint fails to plead any factual allegations that would even *suggest* that any allegedly infringing activities were deliberate or intentional, let alone facts sufficient to support an inference that Honeywell's behavior was egregious beyond typical allegations of infringement. *See Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021) ("[W]illfulness requires deliberate or intentional infringement."); *see also Halo*, 579 U.S. at 110 (stating that willful infringement may be found only in "egregious cases of misconduct beyond typical infringement").

DSM's bare allegations are insufficient to plead a cognizable claim and should be dismissed. *See, e.g., Boston Sci. Corp.*, 415 F. Supp. 3d at 492 (dismissing claim of willful infringement because "[a] complaint must include more than mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' to survive a motion to dismiss").

## VI.   CONCLUSION

For at least the foregoing reasons, Honeywell respectfully requests that the Court dismiss DSM's Complaint in its entirety for failure to state a claim.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

---

Rodger D. Smith II (#3778)
Benjamin Yenerall (#7132)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19801
(302) 658-9200
rsmith@morrisnichols.com
byenerall@morrisnichols.com

*Attorneys for Defendants*

OF COUNSEL:

S. Benjamin Pleune
M. Scott Stevens
Lauren N. Griffin
Matthew M. Turk
Erin Beaton
ALSTON & BIRD LLP
1120 South Tryon Street
Suite 300
Charlotte, NC  28203-6818
(704) 444-1000

August 28, 2023

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 28, 2023, upon the following in the manner indicated:

| | |
|---|---|
| Kenneth L. Dorsney, Esq.<br>Cortlan S. Hitch, Esq.<br>MORRIS JAMES LLP<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE  19801<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Erick J. Palmer, Esq.<br>MAYER BROWN LLP<br>71 South Wacker Drive<br>Chicago, IL 60606<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Joseph A. Mahoney, Esq.<br>Cecilia G. Rambarat, Esq.<br>MAYER BROWN LLP<br>300 South Tryon Street<br>Suite 1800<br>Charlotte, NC 28202<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |

*/s/ Rodger D. Smith II*
_____
Rodger D. Smith II (#3778)