IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DSM IP ASSETS, B.V.; DSM PURITY, B.V.; DSM BIOMEDICAL, B.V.; & DSM BIOMEDICAL, INC., <br><br> Plaintiffs, <br><br> v. <br><br> HONEYWELL INTERNATIONAL, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 23-675 (WCB) |

# DEFENDANT HONEYWELL INTERNATIONAL INC.'S REPLY BRIEF
# IN SUPPORT OF ITS MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6)

OF COUNSEL:

S. Benjamin Pleune
M. Scott Stevens
Lauren N. Griffin
Matthew M. Turk
Erin Beaton
ALSTON & BIRD LLP
1120 South Tryon Street
Suite 300
Charlotte, NC  28203-6818
(704) 444-1000

October 20, 2023

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Benjamin Yenerall (#7132)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19801
(302) 658-9200
rsmith@morrisnichols.com
byenerall@morrisnichols.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION ................................................................................................................. 1

II. DSM'S COMPLAINT FAILS TO PLAUSIBLY PLEAD DIRECT INFRINGEMENT .......................... 2

    A. The Pleading Standard Articulated in Disc Disease Does Not Apply .................... 2

    B. DSM's Complaint is Devoid of Factual Allegations ............................................... 5

    C. DSM's Allegations Based on Information and Belief Are Not Proper .................. 7

    D. Honeywell Is Not Asking DSM to Prove Its Case.................................................... 8

III. DSM'S COMPLAINT FAILS TO PLEAD INDIRECT INFRINGEMENT .......................................... 8

    A. DSM Does Not Adequately Plead Direct Infringement by Another ..................... 8

    B. DSM Does Not Adequately Plead Pre-Suit Knowledge and Specific Intent.......... 9

    C. DSM Does Not Adequately Plead Acts of Inducement........................................ 10

IV. DSM'S COMPLAINT FAILS TO PLEAD WILLFUL INFRINGEMENT ........................................ 10

V. CONCLUSION.................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*10X Genomics, Inc. v. Celsee, Inc.*,
  C.A. No. 19-862, 2019 WL 5595666 (D. Del. Oct. 30, 2019) ............................................9, 10

*AgroFresh Inc. v. Hazel Techs, Inc*,
  C.A. No. 18-1486-MN, 2019 WL 1859296 (D. Del. Apr. 25, 2019) .........................................5

*Bausch & Lomb Inc. v. SBH Holdings LLC*,
  C.A. No. 20-1463, 2022 WL 856750 (D. Del. Mar. 23, 2022)...................................................5

*DIFF Scale Operation Research, LLC v. MaxLinear, Inc.*,
  C.A. No. 19-2109-LPS-CJB, 2020 WL 2220031 (D. Del. May 7, 2020) ....................... *passim*

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
  888 F.3d 1256 (Fed. Cir. 2018)........................................................................................2, 3, 4, 5

*Express Mobile, Inc. v. Squarespace, Inc.*,
  C.A. No. 20-1163, 2021 WL 3772040 (D. Del. Aug. 25, 2021) ................................................5

*Genedics, LLC v. Meta Co.*,
  C.A. No. 17-1062-CJB, 2018 WL 3991474 (D. Del. Aug. 21, 2018) ........................................4

*Horatio Wash. Depot Techs. LLC v. Tolmar, Inc.*,
  C.A. No. 17-1086-LPS, 2018 WL 5669168 (D. Del. Nov. 1, 2018) ..........................................2

*iFIT Inc. v. Peloton Interactive, Inc.*,
  C.A. No. 21-507-RGA, 2022 WL 609605 (D. Del. Jan. 28, 2022) ............................................9

*Kyowa Hakka Bio, Co. v. Ajinomoto Co.*,
  C.A. No. 17-313, 2018 WL 834583 (D. Del. Feb 12, 2018) ....................................................10

*Lexington Luminance LLC v. Bulbrite Indus.*,
  C.A. No. 22-cv-3787, 2023 WL 5702809 (D.N.J. Sept. 5, 2023) .........................................3, 4

*Lexington Luminance LLC v. Service Lighting & Electrical Supplies, Inc.*,
  C.A. No. 3:18-cv-01074, 2018 WL 10425908 (N.D. Tex. Oct. 9, 2018)..................................3

*Lincoln Ben. Life Co. v. AEI Life, LLC*,
  800 F.3d 99 (3d Cir. 2015)..........................................................................................................7

*Malvern Panalytical Ltd. v. Ta Instruments-Waters LLC*,
  C.A. No. 19-2157-RGA, 2021 WL 3856145 (D. Del. Aug. 27, 2021)......................................9

*Mary Ann Pensiero, Inc. v. Lingle*,
    847 F.2d 90 (3d Cir. 1988) ................................................................................................ 8

*Nncrystal US Corp. v. Nanosys, Inc.*,
    C.A. No. 19-1307, 2020 WL 616307 (D. Del. Feb. 10, 2020) .................................................. 5

*Robocast, Inc. v. Netflix, Inc.*,
    640 F. Supp. 3d 365 (D. Del. 2022) ............................................................................. 4, 5

*Rockefeller Ctr. Props. Sec. Litig. v. Rockefeller*,
    311 F.3d 198 (3d Cir. 2002) ........................................................................................... 7

*Takeda Pharmaceuticals U.S.A., Inc. v. West-Ward Pharmaceutical Corporation*,
    785 F.3d 625 (Fed. Cir. 2015) ...................................................................................... 10

## Rules and Statutes

Fed. R. Civ. P. 11 ................................................................................................................ 8

Fed. R. Civ. P. 12(b)(6) ....................................................................................................... 5

## I. INTRODUCTION

DSM cannot shield its purported pre-suit investigation from Honeywell and the Court, while at the same time rely on threadbare allegations that fail to sufficiently address the majority of the elements of the asserted claims. DSM also cannot rely on Federal Circuit precedent assessing "simple" technology. Unlike the precedent upon which DSM attempts to rely, the claims of the asserted '532 Patent are not directed to a simple mechanical device, the elements of which can be identified simply from pictures of the accused products.

Instead, the claims of the asserted '532 Patent require at least the following technically sophisticated elements:

- gel spinning a mixture containing ultra-high molecular weight polyethylene (UHMwPE) having an intrinsic viscosity (IV) of between about 8 and 40 dl/g;
- between 0.1 and 7.0 wt% of an inorganic chromium oxide-containing pigment;
- spin solvent of less than about 500ppm; and
- less than 1000ppm of further constituents.

DSM fails to allege a factual basis that any *one* of these elements are present in the accused products, much less that *all* are included in the accused products as required to make a plausible allegation of infringement. In cases with similarly complex claims, courts have found threadbare allegations to be insufficient as a matter of law and have granted motions to dismiss for failure to state a claim.

DSM cannot assert a plausible claim for infringement by reciting claim elements and merely concluding that the accused products have those elements. Rather than file an amended complaint that provides some shred of plausible evidence, DSM's Opposition only repeats the same conclusory allegations, and therefore its Complaint must be dismissed.

## II.    DSM'S COMPLAINT FAILS TO PLAUSIBLY PLEAD DIRECT INFRINGEMENT

### A.    The Pleading Standard Articulated in *Disc Disease* Does Not Apply

DSM incorrectly alleges that a lower pleading standard articulated in *Disc Disease* should apply because "(i) the complaint specifically identified a limited number of accused products by name, (ii) the asserted claims were relatively easy for the accused infringer to understand, and (iii) the complaint summarily alleged that the accused products meet 'each and every limitation of at least one claim' of the asserted patents." D.I. 20 at 6 (quoting *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018)).  In so doing, DSM skips over the key details of the Federal Circuit's holding in *Disc Disease* that make DSM's Complaint readily distinguishable.

In *Disc Disease*, the Federal Circuit held that plaintiff's allegations were sufficient under the plausibility standard because (1) the case involved a "***simple technology***"; (2) the asserted patents were attached to the complaint; (3) the complaint specifically identified the accused products "by name ***and by attaching photos of the product packaging as exhibits***"; and (4) the complaint alleged that the accused products met "each and every element of at least one claim" of each of the asserted patents. *Disc Disease*, 888 F.3d at 1260 (emphasis added).  The same is not true, however, when the technology is *not* simple.  See *DIFF Scale Operation Research, LLC v. MaxLinear, Inc.*, C.A. No. 19-2109-LPS-CJB, 2020 WL 2220031, at *1 n.2 (D. Del. May 7, 2020); *Horatio Wash. Depot Techs. LLC v. Tolmar, Inc.*, C.A. No. 17-1086-LPS, 2018 WL 5669168, at *11–12 (D. Del. Nov. 1, 2018).  In *DIFF Scale*, the Court distinguished the complaint from that in *Disc Disease* because the "patents-in-suit concern subject matter that is much more technologically sophisticated than that in *Disc Disease*" and the plaintiff included no photographs of the accused products. *DIFF Scale*, 2020 WL 2220031 at *1 n.2.  Here, like in

*DIFF Scale*, DSM cannot rely on *Disc Disease* to avoid pleading facts that plausibly allege the accused products practice each limitation of the asserted claims. *Id.* at *1.

**First**, the technology here is not "simple." To the contrary, the present technology is a complex chemical yarn having particular physical and chemical properties. DSM seems to suggest (incorrectly) that the claims of the '532 Patent are simple because it is "relatively easy for the accused infringer to understand." D.I. 20 at 6. But this is not the test for whether a technology is "simple," and DSM provides no authority in support of that argument. In *Disc Disease*, the technology consisted of basic mechanical elements that could be readily identified in pictures of the accused products. *Disc Disease*, 888 F.3d at 1257. In contrast, in *Lexington Luminance LLC v. Service Lighting & Electrical Supplies, Inc.*, a case involving a complex chemical compound, the court found that the technology at issue was not simple and *Disc Disease* did not apply because the claims were directed to a particular structure and chemical composition including, for example, a layer that forms a "lattice-mismatched misfit system" with "a substrate that has at least one particular element or compound." C.A. No. 3:18-cv-01074, 2018 WL 10425908, at *2 (N.D. Tex. Oct. 9, 2018) (internal quotations omitted); *see also Lexington Luminance LLC v. Bulbrite Indus.*, C.A. No. 22-cv-3787, 2023 WL 5702809, at *1–2 n.3 (D.N.J. Sept. 5, 2023) (granting motion to dismiss involving same patent because did not involve "a simple technology").

The claims of the '532 Patent are directed to a complex multi-filament yarn having particular physical and chemical properties. The claims require: a colored multi-filament yarn (1) comprising filaments that have been obtained by gel spinning a mixture containing UHMwPE having an intrinsic viscosity of between about 8 and 40 dl/g, a spin solvent and a pigment, and (2) wherein the filaments consist of (a) UHMwPE, (b) between 0.1 and 7.0 we % of an inorganic chromium oxide-containing pigment, (c) a residual amount of spin solvent of less than about 500

3

ppm, and (d) less than 1000 ppm of further constituents. '532 Patent at cl. 1. Like *Lexington Luminance*, this technology is far from simple, and conclusory allegations do not provide "fair notice of infringement." *Id.*

**Second**, DSM admits in its Opposition that it did not attach photos of the accused products to the Complaint. D.I. 20 at 12. This only makes *Disc Disease* further distinguishable. *See DIFF Scale*, 2020 WL 2220031, at *1 n.2. The holding in *Disc Disease* suggests that "where the technology at issue is not complex, a reviewing court may be able to determine that it is plausible that an accused product meets the limitations of an asserted claim simply ***by viewing photos of the product and comparing those photos to the words of the claim***." *Genedics, LLC v. Meta Co.*, C.A. No. 17-1062-CJB, 2018 WL 3991474, at *12 n.15 (D. Del. Aug. 21, 2018) (emphasis added); *see also Lexington Luminance*, 2018 WL 10425908, at *1 ("[S]imple pleadings **supported by photographs** may be sufficient to meet the standards of *Twombly* and *Iqbal*." (emphasis added)). But, again, this technology is not so simple. And not only did DSM fail to attach photos, but DSM admitted that photos of the accused products would be insufficient because they "would depict only a blue-colored yarn made of UHMWPE fibers"[1] and that only "factual allegations can provide compositional information that photographs simply cannot." D.I. 20 at 12.

**Third**, the remaining cases DSM cites are also distinguishable because, in each case, the plaintiff provided factual allegations beyond what was required in *Disc Disease* that were sufficient to put the defendant on notice of the alleged infringement. For example, in *Robocast, Inc. v. Netflix, Inc.*, the Court found that the *Disc Disease* analysis was "immaterial" because "other aspects of [the complaint]—such as the identifications and factual allegations described above—

---

[1] As stated in the Complaint, blue-colored yarn made of UHMwPE was known prior to the '532 Patent. D.I. 1 at ¶¶ 24–26.

4

provide the 'fair notice' that lies at the heart of the Rule 12(b)(6) inquiry." 640 F. Supp. 3d 365, 370 (D. Del. 2022); s*ee also Bausch & Lomb Inc. v. SBH Holdings LLC*, C.A. No. 20-1463, 2022 WL 856750, at *3 (D. Del. Mar. 23, 2022) (noting that plaintiff described composition of the accused products ("lutein, zeaxanthin, vitamins C and E, zinc, and copper") and alleged that the compositions contain a formulation disclosed and claimed in the patents-in-suit); *Express Mobile, Inc. v. Squarespace, Inc.*, C.A. No. 20-1163, 2021 WL 3772040, at *2 (D. Del. Aug. 25, 2021) (finding "sufficient factual allegations of infringement" to put the alleged infringer on fair notice, including "detail[ing] how the Accused Instrumentalities build a user's website, and explain[ing] how the actions infringe each Asserted Patent"); *Nncrystal US Corp. v. Nanosys, Inc.*, C.A. No. 19-1307, 2020 WL 616307, at *2 (D. Del. Feb. 10, 2020) (finding "other aspects of the pleading to be highly relevant" in determining defendant had fair notice); *AgroFresh Inc. v. Hazel Techs, Inc*, C.A. No. 18-1486-MN, 2019 WL 1859296, at *2 (D. Del. Apr. 25, 2019) (finding the complaint "also states how Hazel CA purportedly infringes those claims").

Because *Disc Disease* does not apply, DSM "needs to have pleaded facts that plausibly indicate that [the] accused products practice each of the limitations asserted in the relevant claims." *DIFF Scale*, 2020 WL 2220031, at *1.

    **B.**    **DSM's Complaint is Devoid of Factual Allegations**

DSM has failed to plead any facts that plausibly indicate that the accused products practice the limitations in the asserted claims. The Complaint is made up of no more than conclusory allegations that merely track the claim language. In its Opposition, DSM identifies five "detailed factual allegations," citing to various paragraphs of the Complaint for each, that it proposes the Court should accept as true. D.I. 20 at 7–8. Four of the five[2] "allegations" echo the

---

[2] DSM alleges that the accused products contain about 40 or 60 filaments of UHMwPE. D.I. 20 at 8 (citing D.I. 1 at ¶¶ 49, 50). However factual in nature, this fails to remedy the

5

conclusory allegations in the Complaint which are, in turn, threadbare recitals of the claim language, as shown:

| Claim 1 of the '532 Patent | DSM's Allegations in Complaint |
|---|---|
| 1. A colored multi-filament yarn comprising filaments that have been obtained by **gel spinning** a mixture containing | ¶ 51. **On information and belief**, the filaments in the SPECTRA® Blue Products are manufactured by a **gel-spinning** process. |
| ultra-high molecular weight polyethylene (UHMwPE) having an **intrinsic viscosity (IV) of between about 8 and 40 dl/g**, | ¶ 53. The SPECTRA® Blue Products exhibit characteristics substantially similar to the exemplary multi-filament yarns described in the '532 patent, including tenacity, modulus, elongation at break, and **on information and belief**, **an intrinsic viscosity between 8-40 dl/g**. |
| a **spin solvent** and a **pigment**, | ¶ 52. **On information and belief**, the gel-spinning process used to make the filaments in the SPECTRA® Blue Products includes gel-spinning UHMWPE and **C.I. Pigment Blue 36** in a **spin solvent**. |
| and wherein the filaments consist of UHMwPE, | |
| between **0.1 and 7.0 wt. %** of an inorganic chromium oxide-containing pigment, | ¶ 54. **On information and belief**, the filaments in the SPECTRA® Blue Products contain about **1-2% by weight**[3] of C.I. Pigment Blue 36. |
| a **residual amount of spin solvent of less than about 500 ppm**, | ¶ 56. Given their intended use in medical applications, **on information and belief**, the colored UHMWPE filaments in each SPECTRA® Blue Product are of high purity. |
| and **less than 1000 ppm of further constituents**. | ¶ 57. Other than UHMWPE and C.I. Pigment Blue 36, **on information and belief**, each SPECTRA® Blue Product contains **less than 60 ppm of residual spin solvent**[4] and **less than 1000 ppm of other components**.[5] |

---

deficiencies with respect to limitations of claim 1 of the '532 Patent. *See DIFF Scale*, 2020 WL 2220031 at *1 n.2. Honeywell reserves the right to admit or deny these allegations at the appropriate time.

[3] This is the language of dependent claim 3 of the '532 Patent, which requires that "the amount of the inorganic pigment present in the filaments is lower than 2.0 wt. %."

[4] This is the language of dependent claim 7 of the '532 Patent, which requires that "the residual amount of spin solvent is less than 60 ppm."

[5] This is the language of dependent claim 8 of the '532 Patent, which requires that "the filaments contain less than 500 ppm of further constituents."

6

Exemplary of DSM's conclusory allegations, DSM alleges on information and belief that the accused products are "of high purity," D.I. 1 at ¶ 56, but provides no context as to what "high purity" means in medical applications, much less how this believed purity relates to the limitations of the claim. Conclusory allegations that track the claim language do not provide Honeywell with "fair notice of what is being accused of infringement" and therefore DSM's Complaint should be dismissed. *Bot M8*, 4 F.4th at 1353.

### C. DSM's Allegations Based on Information and Belief Are Not Proper

DSM's allegations of infringement are further insufficient because they rely solely "on information and belief." DSM argues that it did not need to plead more because "how Honeywell manufactures the accused products, including details of specific components, temperatures, and processing steps, is not known." D.I. 20 at 10. The claims of the '532 Patent, however, have many limitations unrelated to the manufacturing process. For example, the claims require: "colored multi-filament yarn comprising filaments . . . consist[ing] of UHMwPE, between 0.1 and 7.0 wt. % of an inorganic chromium oxide-containing pigment, a residual amount of spin solvent of less than about 500 ppm, and less than 1000 ppm." Even more, DSM admits that it obtained a sample of the accused products and could have investigated these properties. D.I. 20 at 10. Because DSM has a sample of the accused products, the final chemical compositions of the accused products are self-evidently "not peculiarly within the defendant's possession." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 n.31 (3d Cir. 2015). Nevertheless, even when pleading on information and belief, "boilerplate and conclusory allegations will not suffice. Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible." *Rockefeller Ctr. Props. Sec. Litig. v. Rockefeller*, 311 F.3d 198, 216 (3d Cir. 2002). DSM's Complaint, however, pleads no more than boilerplate and conclusory allegations.

### D. Honeywell Is Not Asking DSM to Prove Its Case

Honeywell does not ask DSM to prove its allegations of infringement or disclose analytical testing. Rather, Honeywell asks the Court to dismiss the Complaint because it does not show how it is *plausible* that the accused products infringe the '532 Patent. As Honeywell has explained in detail, the Complaint lacks any facts to support its conclusory infringement allegations. DSM admits that they obtained an accused product, but DSM does not indicate whether any technical analysis was performed—or if DSM obtained the sample before or after filing suit. D.I. 20 at 10. This makes it possible—*plausible*, even—that DSM failed to perform any reasonable pre-suit investigation. Rather than supplement the Complaint with any shred of factual support, DSM has decided to double down on its baseless allegations.[6]

### III. DSM'S COMPLAINT FAILS TO PLEAD INDIRECT INFRINGEMENT

### A. DSM Does Not Adequately Plead Direct Infringement by Another

DSM does not adequately plead any act of direct infringement. Additionally, for indirect infringement, DSM does not identify any third-party users of the accused products. The Complaint and DSM's Opposition points to third-party users **of its own products**. D.I. 20 at 14; D.I. 1 at ¶¶ 16–17. Parties using DSM's products are necessarily not using the accused products. And although DSM alleges that the accused products have been commercially available,[7] DSM fails to allege that any third-party customer has bought, made, or used the accused products.

---

[6]   Honeywell has concerns regarding the complete absence of factual support or technical analysis because, on the face of the Complaint, it appears that DSM *failed* to perform a reasonable pre-suit investigation. This is particularly true because testing of the accused products would demonstrate that Honeywell *does not* infringe the '532 Patent. To comply with Rule 11, DSM must have "conduct[ed] a reasonable investigation of the facts and a normally competent level of legal research to support the presentation." *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir. 1988). On the current record, it appears that DSM has failed to meet its obligations.

[7]   DSM states "Honeywell even acknowledges that it was commercializing the accused products before DSM filed suit." D.I. 20 at 8. This is not true. In the Motion, Honeywell stated,

### B. DSM Does Not Adequately Plead Pre-Suit Knowledge and Specific Intent

DSM fails to adequately plead pre-suit knowledge and specific intent. DSM offers three pre-suit dates that Honeywell allegedly learned of the '532 Patent because "Honeywell actively monitors DSM's patent filings relating to UHMWPE fiber technologies." D.I. 20 at 14. DSM's allegations are not sufficient to establish knowledge because knowledge of a patent application alone is not enough to establish knowledge of the patent that issued from the application. *See iFIT Inc. v. Peloton Interactive, Inc.*, C.A. No. 21-507-RGA, 2022 WL 609605, at \*2 (D. Del. Jan. 28, 2022). Further, allegations of competitor monitoring, "particularly when they do not reference the patents-in-suit, [cannot] support inferences of pre-suit knowledge of the patents-in-suit and pre-suit knowledge of infringement." *Malvern Panalytical Ltd. v. Ta Instruments-Waters LLC*, C.A. No. 19-2157-RGA, 2021 WL 3856145, \*3 (D. Del. Aug. 27, 2021). Allegations that the accused infringer "acquired pre-suit knowledge of the Asserted Patents and infringement of the Asserted Patents through Defendants' competitive intelligence, research and development, sales, and marketing activities" is insufficient to plausibly allege pre-suit knowledge of infringement. *Id.* And "existence of a competitor relationship and activity monitoring is [not] sufficient to support a theory of willful blindness." *Id.* at \*4 n.3.

In its Opposition, DSM also claims that Honeywell knew of the '532 Patent because "Honeywell initially refrained from commercializing the accused products." D.I. 20 at 15 (citing *10X Genomics, Inc. v. Celsee, Inc.*, C.A. No. 19-862, 2019 WL 5595666, at \*8 (D. Del. Oct. 30, 2019)). But DSM's reliance on *10X Genomics* is misplaced. In *10X Genomics*, the plaintiff supported its allegations of pre-suit knowledge with detailed factual allegations regarding the

---

"According to the Complaint, the accused SPECTRA Blue Products 'have been commercially available to Honeywell's customers since at least the third quarter of 2022." Honeywell reserves the right to admit or deny this allegation at the appropriate time.

9

defendant's efforts to recruit employees and copy the plaintiff's technology, which occurred prior to the filing of the lawsuit. *Id.* at *8. Here, DSM is making bald accusations about timing without any support. For these reasons, DSM fails to adequately plead pre-suit knowledge.

### C.   DSM Does Not Adequately Plead Acts of Inducement

DSM boldly states that it does not need to demonstrate inducing acts or specific intent because the patent claims are "directed to compositions and not methods of using those compositions." D.I. 20 at 17. DSM provides no legal basis for this assertion, which flies in the face of Federal Circuit precedent. *See, e.g., Takeda Pharmaceuticals U.S.A., Inc. v. West-Ward Pharmaceutical Corporation*, 785 F.3d 625, 631 n.3 (Fed. Cir. 2015) (holding that claim of induced infringement requires affirmative act, including that which causes or encourages another to infringe a patent). DSM claims that it merely needs to allege that Honeywell has placed products into the stream of commerce, citing to *Kyowa Hakka Bio, Co. v. Ajinomoto Co.*, C.A. No. 17-313, 2018 WL 834583 (D. Del. Feb 12, 2018). The plaintiff in *Kyowa*, however, alleged inducing acts beyond placing accused products in the stream of commerce and the court ***did not find*** "it was reasonable to infer defendant placed infringing instrumentalities into stream of commerce knowing others would purchase and use them." *Id.* at *11; D.I. 20 at 17.

### IV.   DSM'S COMPLAINT FAILS TO PLEAD WILLFUL INFRINGEMENT

DSM does not adequately plead (1) direct infringement, (2) pre-suit knowledge, or (3) specific intent. For these reasons, DSM's willful infringement claims should be dismissed.

### V.   CONCLUSION

For the foregoing reasons, Honeywell respectfully requests that the Court dismiss DSM's Complaint in its entirety for failure to state a claim.

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| OF COUNSEL: | */s/ Rodger D. Smith II* |
|  | _____ |
| S. Benjamin Pleune | Rodger D. Smith II (#3778) |
| M. Scott Stevens | Benjamin Yenerall (#7132) |
| Lauren N. Griffin | 1201 North Market Street |
| Matthew M. Turk | P.O. Box 1347 |
| Erin Beaton | Wilmington, DE  19801 |
| ALSTON & BIRD LLP | (302) 658-9200 |
| 1120 South Tryon Street | rsmith@morrisnichols.com |
| Suite 300 | byenerall@morrisnichols.com |
| Charlotte, NC  28203-6818 |  |
| (704) 444-1000 | *Attorneys for Defendants* |

October 20, 2023

11

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 20, 2023, upon the following in the manner indicated:

| | |
|---|---|
| Kenneth L. Dorsney, Esq.<br>Cortlan S. Hitch, Esq.<br>MORRIS JAMES LLP<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE  19801<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Erick J. Palmer, Esq.<br>MAYER BROWN LLP<br>71 South Wacker Drive<br>Chicago, IL  60606<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Joseph A. Mahoney, Esq.<br>Cecilia G. Rambarat, Esq.<br>MAYER BROWN LLP<br>300 South Tryon Street<br>Suite 1800<br>Charlotte, NC  28202<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)